United States Court of Appeals,

Eleventh Circuit.

No. 96-4056.

DIGITAL PROPERTIES, INC., a Florida Corporation, Plaintiff-Appellant,

v.

CITY OF PLANTATION, a Florida Municipal Corporation, Defendant-Appellee.

Sept. 5, 1997.

Appeal from the United States District Court for the Southern District of Florida.

Before HATCHETT, Chief Judge, COX, Circuit Judge, and MESKILL[*], Senior Circuit Judge.

HATCHETT, Chief Judge:

In this appeal, we affirm the judgment of the district court dismissing this First Amendment action based on appellant's failure to present an actual case or controversy.

BACKGROUND

Appellant Digital Properties, Inc. (Digital) sought to establish an adult book and video store in the City of Plantation, Florida (Plantation or the City). The business would include the rental or sale of sexually oriented video tapes, books, magazines and novelties, as well as the on-premises viewing of sexually explicit video materials using currency-operated viewing devices. Digital entered into a contract to purchase a commercial building, which had formerly housed a restaurant, located on State Road 7 in Plantation. Digital subsequently hired an architect, Robert Ishman, to design and plan the remodeling necessary to convert the property to conform to Digital's intended use.

Prior to Digital's contractual agreement to purchase the property, the City reclassified the property as a "B-3P" zone.[1] Pursuant to the City's master list of business and commercial uses, a B-3P zone is a general business district permitting such business uses as book stores, newsstands, and

---

[*]Honorable Thomas J. Meskill, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

[1]In fact, Digital made the contract contingent upon the rezoning of the property from "B-7Q" to B-3P. B-3P zones contain fewer restrictions than other commercially zoned areas.

theater and motion picture houses.  *See* Plantation Code of Ordinances (Code of Ordinances or

P.C.O.) § 27-720.  Pursuant to the Code of Ordinances,

> [w]here a commercial or business use is not expressly permitted or prohibited on [the] master list of business and commercial uses, it shall be deemed permissive and shall require an ordinance defining such permissive use, placing such restrictions thereon as are deemed appropriate, and otherwise identifying the commercial or business zoning use districts wherein such permissive use will be permitted;  it being the expressed intent of the city council that all such permissive (nonidentified) uses on the master list of business and commercial uses are prohibited until so defined and included.

P.C.O. § 27-716(g).

The master list of business uses did not expressly identify *adult* book or video stores as either

permitted or prohibited in the B-3P zone.  Based upon prior advice of counsel, Digital believed that

any zoning scheme which did not expressly permit adult businesses in at least one zoning area was

unconstitutional pursuant to the Supreme Court's decision in *Schad v. Borough of Mount Ephraim,*

452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).  Assuming, therefore, that Plantation's zoning

scheme was unconstitutional, Digital nonetheless proceeded to determine whether the City permitted

such non-listed uses in B-3P zones.

On September 22, 1995, Ishman and Digital's attorney, Joseph Lopez, attempted to file the

remodeling plans at Plantation City Hall. Plantation required that an owner file such plans and obtain

zoning approval prior to the issuance of a building permit.  *See* P.C.O. § 27-416.  A clerk in the

building department first directed Ishman and Lopez to seek "environmental approval" before

submitting the plans.  The clerk also suggested that the men meet with her supervisor, the Chief

Building Inspector.  Following the clerk's advice, Ishman and Lopez discussed their plans with the

supervisor, who instructed them to visit the zoning department.

Upon reaching the zoning department, Lopez and Ishman spoke with Assistant Zoning

Technician Kris Sorrentino.  They introduced themselves as representatives of the State Road 7

property's owner and informed Sorrentino of Digital's intent to change the use of the building from

a restaurant to an adult book and video store.  The men handed Sorrentino the following description

of the proposed enterprise:

> A retail business which rents and sells pre-recorded videotapes, sells books, magazines, periodicals, novelties and paraphernalia, as well as allowing on-premise, individual viewing

of videotapes by way of currency-operated viewing devices. Most of the products and videotapes in an Adult Video Store are of the sexually oriented, adult variety, for which reason minors are excluded from the premises.

The parties contest the exact nature of Sorrentino's response. Digital contends that Sorrentino told Ishman and Lopez that "the City of Plantation does not allow such use" and refused to accept the plans. The City asserts that Sorrentino informed them that the Code of Ordinances did not expressly permit such a use in a B-3P zone. Digital does not appear to contest, however, that Sorrentino then advised Ishman and Lopez to speak with Manny MacLain, Plantation's Director of Building and Zoning, in part because the scope of her job did not encompass accepting building plans over the counter. Following this exchange with Sorrentino, the men immediately left without consulting with MacLain.

On September 27, 1995, Digital filed this action in the United States District Court for the Southern District of Florida pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202. Digital averred that Plantation's zoning scheme was unconstitutional, both facially and as applied. Digital contended that Sorrentino's alleged statement impaired its constitutional rights and constituted injury-in-fact. On September 28, 1995, Digital also sought a preliminary injunction prohibiting Plantation from enforcing the Code of Ordinances to prevent Digital from opening its business. Plantation responded to Digital's preliminary injunction motion and filed a motion on October 30, 1995, pursuant to Federal Rule of Civil Procedure 12(b), to dismiss the complaint.

On November 13, 1995, the district court dismissed Digital's complaint without prejudice for lack of subject matter jurisdiction. The court held that Digital's complaint failed to present an actual case or controversy ripe for adjudication as required by Article III of the United States Constitution. In support of its holding, the court found that Digital's "rush to the courthouse was premature." The court also referred to Digital's failure to exhaust its administrative remedies, pursuant to Plantation's procedures for obtaining zoning variances, as a basis for its dismissal of the complaint. Digital filed this appeal.

ISSUE

We address whether the district court properly dismissed Digital's complaint for lack of

subject matter jurisdiction based on Digital's failure to present a case or controversy ripe for judicial review.

## DISCUSSION

We review a district court's dismissal of a complaint for lack of subject matter jurisdiction under the *de novo* standard. *Secretary of State of Md. v. Joseph H. Munson Co.,* 467 U.S. 947, 954 n. 4, 104 S.Ct. 2839, 2846 n. 4, 81 L.Ed.2d 786 (1984); *GTE Directories Publ'g Corp. v. Trimen Am., Inc.,* 67 F.3d 1563, 1567 (11th Cir.1995). After a careful review of the record, we find that Digital failed to present a case or controversy ripe for judicial review, and we affirm the district court's judgment.

The ripeness doctrine involves consideration of both jurisdictional and prudential concerns. *Johnson v. Sikes,* 730 F.2d 644, 648 (11th Cir.1984). Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review. *See* U.S. Const. art. III, § 2, cl. 1; *see also Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale,* 922 F.2d 756, 759 (llth Cir.1991). "Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint." *Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 940 n. 12 (D.C.Cir.1986); *see also Johnson,* 730 F.2d at 648.

The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes. "The doctrine seeks to avoid entangling courts in the hazards of premature adjudication." *Felmeister v. Office of Attorney Ethics,* 856 F.2d 529, 535 (3d Cir.1988); *see also Abbott Lab. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The ripeness inquiry requires a determination of (*l*) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. *Abbott,* 387 U.S. at 149, 87 S.Ct. at 1515-16; *see also Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir.1995). Courts must resolve "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Cheffer,*

55 F.3d at 1524.

Under the facts at issue, Digital, in its haste to preserve its perceived First Amendment rights, failed to present a mature claim for review. Digital argues correctly that the injury requirement is most loosely applied when a plaintiff asserts a violation of First Amendment rights based on the enforcement of a law, regulation or policy. *See Cheffer,* 55 F.3d at 1523 n. 12; *Hallandale,* 922 F.2d at 760. Even assuming, however, that Plantation's zoning scheme could potentially hamper Digital's First Amendment rights, Digital did not pursue its claim with the requisite diligence to show that a mature case or controversy exists. *See Restigouche, Inc. v. Town of Jupiter,* 59 F.3d 1208, 1212 (11th Cir.1995); *Johnson,* 730 F.2d at 648.

Digital's primary contention posits that Plantation unconstitutionally applied its zoning regulations to preclude Digital from conducting business as an adult-oriented enterprise in Plantation. The actions of Digital's representatives show that Digital's presumption of constitutional infirmity bred impatience and prompted it to file an unripe claim.

Upon advice of counsel, Digital erroneously presumed that Supreme Court precedent rendered Plantation's Code of Ordinances unconstitutional because the P.C.O. failed to provide at least one zone wherein adult enterprises were explicitly permitted.[2] Employees of the building department informed Digital's representatives that they should speak with members of the zoning department. Upon reaching the zoning department, however, Digital waited only long enough to have one non-supervisory employee "confirm" its assumption. At a minimum, Digital had the obligation to obtain a conclusive response from someone with the knowledge and authority to speak for the City regarding the application of the zoning scheme to Digital's proposal.[3] Sorrentino's alleged statement to Digital's representatives that "the City of Plantation does not allow such use,"

---

[2]This assumption derived from Digital's interpretation of the *Schad* decision. Although we do not decide this issue, we note that, in footnote 18, Justice White specifically stated that the Court's decision "does not establish that every unit of local government entrusted with zoning responsibilities must provide a commercial zone in which [protected activity] is permitted." *Schad,* 452 U.S. at 75 n. 18, 101 S.Ct. at 2186 n. 18.

[3]As she asserted in her Declaration in Opposition to Motion for Preliminary Injunction, Sorrentino did not even have the authority to accept the plans at the counter.

simply is not sufficient to create a concrete controversy. We do not find that Sorrentino's conduct deprived Digital of its purported First Amendment rights.

A challenge to the application of a city ordinance does not automatically mature at the zoning counter. In order for the city to have "applied" the ordinance to Digital, a city official with sufficient authority must have rendered a decision regarding Digital's proposal. Aside from merely expressing her initial reaction to the proposal, Sorrentino suggested that Ishman and Lopez should meet with her supervisor to obtain a decision regarding zoning approval; following this suggestion would have had no more of a "chilling" effect on Digital's First Amendment rights than did their following the suggestion of the building department clerk that the men meet with the Chief Building Inspector. As the Supreme Court held in *Abbott,* a "basic rationale" of the ripeness doctrine is "to protect the [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." 387 U.S. at 148-49, 87 S.Ct. at 1515.

Digital's impatience precluded the formation of a concrete case or controversy. Without the presentation of a binding conclusive administrative decision, no tangible controversy exists and, thus, we have no authority to act. *See Hallandale,* 922 F.2d at 762-63. The Code of Ordinances, on its face, permits book stores to conduct business in a B-3P zone. *See* P.C.O. 27-720. In addition, although not expressly permitted, the City appears to allow the operation of video stores in a B-3P zone. Moreover, no explicit delineation between book and video stores and *adult* book and video stores exists in the Code of Ordinances. Digital's challenge, therefore, is founded upon its anticipated belief that Plantation would interpret the P.C.O. in such a way as to violate Digital's First Amendment rights. Accordingly, this action only constitutes a potential dispute, and this court has neither the power nor the inclination to resolve it. *See Abbott,* 387 U.S. at 148, 87 S.Ct. at 1515; *see also Association for Children for Enforcement of Support, Inc. v. Conger,* 899 F.2d 1164, 1166 (11th Cir.1990).[4]

---

[4]To the extent that the complaint challenges the facial constitutionality of the Code of Ordinances, we dismiss the claim for lack of ripeness as a matter of judicial restraint. With regard to any facial challenge, Digital only contests the district court's reliance on Digital's

CONCLUSION

The determination of ripeness "goes to whether the district court had subject matter jurisdiction to hear the case." *Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 n. 7 (11th Cir.1989). Digital's erroneous presumptions and impatience led it to rush to the courthouse and present an insufficiently concrete claim. Consequently, the district court properly dismissed this action.[5]

AFFIRMED

---

failure to exhaust its administrative remedies. Even if we assume, however, that the Supreme Court's decision in *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), precludes imposing an exhaustion requirement on a First Amendment facial challenge to an ordinance under 42 U.S.C. § 1983, Digital still faces the ripeness hurdle. Specifically, we must still consider whether "the conflicting parties present a real, substantial controversy which is definite and concrete rather than hypothetical or abstract." *Hallandale,* 922 F.2d at 760. As noted above, Digital neglected to present a mature claim upon which a federal court could make a "well-reasoned, constitutional decision." *Hallandale,* 922 F.2d at 760.

[5]Given its lack of subject matter jurisdiction, the district court also properly denied Digital's motion for a preliminary injunction. In addition, the court did not abuse its discretion in refusing to allow Digital to file a second amended complaint. Such a maneuver would have been futile, as it would not have cured Digital's failure to take sufficient action to create a concrete controversy. *See* Rudolph v. Arthur Andersen & Co., 800 F.2d 1040, 1042 (11th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987); Halliburton & Assocs., Inc. v. Henderson, Few & Co., 774 F.2d 441, 444 (11th Cir.1985).